530 A.2d 112

**James SHONBERGER and Helaine Schonberger, trading as J.S. Apparel, Appellants**

**v.**

**Nathan OSWELL, trading as Oswell Enterprises.**

Superior Court of Pennsylvania.

Argued April 30, 1987.

Filed Aug. 18, 1987.

Alan M. Black, Allentown, for appellants.

Before OLSZEWSKI, DEL SOLE and HOFFMAN, JJ.

HOFFMAN, Judge:

██ This is an appeal from the lower court order entering judgment in favor of appellee.[1] Appellant contends that the lower court erred in finding that appellee had an effective

---

1. We note that following the bench trial, the lower court, instead of entering a verdict against appellants, labelled its findings "judgment." Following the filing and denial of post-trial motions, the court then entered an official judgment against appellant and this appeal followed. Because the initial, and erroneously labelled, judgment was entered before the filing and denial of post-verdict motions, its entry was premature and void, and therefore did not begin the thirty-day appeal period under Pa.R.A.P. 903(a). *Murphy v. Brong*, 321 Pa. Superior Ct. 340, 341, 468 A.2d 509, 511 (1983). Accordingly, because this appeal was filed within thirty days of the valid judgment, it is properly before us.

defense to appellant's conversion action. We agree, and, accordingly, reverse the lower court order and remand the case for further proceedings.

Appellant, a supplier of women's clothing, entered into a consignment agreement with a corporation with appellee as sole shareholder. The terms of the agreement were that appellee would sell appellant's goods through his stores, keep a percentage of the proceeds, and then remit the remainder to appellant. For over two years both parties complied with the agreement. During the third year, appellee began to fail to remit the required proceeds to appellant. After a further two year period of negotiation during which appellee complied with the terms of the agreement and with a new agreement designed to reduce the delinquent balance, appellee ceased all payments to appellant. The delinquent balance at that time was $25,790.24. Three months after appellee's last payment, appellant filed a two-count complaint against appellee individually seeking to recover damages for the delinquent amount. Count one alleged that appellant did not realize that appellee was trading as a corporation. The lower court entered a directed verdict against appellant on this count, and that holding is not challenged on appeal. Count two alleged that appellee was individually liable for his own tortious conduct. It alleged that appellee had converted the proceeds from the sale of appellant's property for his own and the corporation's use. After a hearing, the lower court found that appellee had a proper defense to this action, and entered judgment in his favor. Appellant's timely post-trial motion was denied and this appeal followed.

Appellant contends that the lower court erred in finding that because he did not bring his action after appellee's initial breach but rather waited until appellee was in complete breach appellee had a successful defense to the conversion action. We agree.

Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification. *Steven-*

*son v. Economy Bank of Ambridge,* 413 Pa. 442, 451, 197 A.2d 721, 726 (1964). Conversion can result only from an act intended to affect chattel. Prosser & Keeton, *Torts,* § 15 (5th ed. 1984). Specific intent is not required, however, but rather an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights establishes the tort. *Id.* Money may be the subject of conversion. *Pearl Assurance Co. v. National Ins. Agency,* 151 Pa.Superior Ct. 146, 156, 30 A.2d 333, 337 (1943). Conversion is an action at law and is, therefore, subject to the two-year statute of limitations. 42 Pa.C.S.A. § 5524.

 Under the "participation theory", an agent or officer of a corporation may be held individually liable for personal participation in tortious acts. *Wicks v. Milzoco Builders,* 503 Pa. 614, 621, 470 A.2d 86, 90 (1983). Such an action may exist even though the agent or officer derived no personal benefit, but acted on behalf, and in the name of, the corporation and the corporation alone was enriched by the act. *McDonald v. First Nat'l Bank of McKeesport,* 353 Pa. 29, 32, 44 A.2d 265, 266 (1945). Courts have sustained actions in conversion under this theory. *Id. See also Pearl Assurance Co. v. National Ins. Agency, supra; Cohen v. Maus,* 297 Pa. 454, 458, 147 A. 103, 105 (1929). Moreover, consignment agreements may form the basis for an action in conversion under the participation theory.

> When the proceeds of a sale of goods, consigned to a corporation to be sold on commission, have been intentionally misapplied, the officers in control of the fund who have knowingly participated in the wrong are individually liable....

3A Fletcher, *Cyclopedia Of The Law Of Private Corporations,* § 1142. *See also Pearl Assurance Co. v. National Ins. Agency, supra.*

> Here the lower court made the following findings of fact: The Defendant, Nathan Oswell, was at all times the sole shareholder, President and Chief Executive Officer of Oswell Outlet Enterprises, Inc., and as such made all

decisions as to what checks were drawn from the Corporation's account, and personally signed all such checks. The Defendant, Nathan Oswell, deposited or directed to be deposited in his Corporation's bank account all proceeds from the sales of merchandise supplied by the Plaintiffs.

The Defendant, Nathan Oswell, used all of the money deposited in his Corporation's bank account directly or indirectly to keep his business enterprise going.

The Defendant, Nathan Oswell, paid himself a salary during the entire period Oswell Outlet Enterprises, Inc. was in business. . . .

Lower Court Opinion at 4. The court further found that appellee was delinquent in the amount claimed by appellant. *Id.* at 3. Turning to the claim of conversion, the lower court concluded that the goods and proceeds in dispute belonged to appellant, and that "The Defendant's personal participation in the use of the Plaintiffs' proceeds is beyond dispute." *Id.* at 8–9. The lower court, therefore, correctly found that the necessary elements for the tort of conversion and the participation theory of liability were present. Nevertheless, the court held:

The Plaintiff's theory of recovery is good and, under a different set of facts, would prevail. In the instant case, however, we find three deficiencies. [sic] First, implied consent; second, acquiescence; third, a questionable "conflict" between the Plaintiffs' and Defendant's interest.

*Id.* at 10. The court based its conclusions on what it termed appellant's "unreasonable delay in objecting to the Defendant's otherwise offensive conduct." *Id.* at 12. The court reasoned that this delay implied that appellant consented to, and acquiesced in, the conversion of his property. *Id.* at 11, 12. Additionally, the court held that the delay showed that the parties' interests were not in conflict. *Id.* at 13. This reasoning was predicated upon the equitable concept of laches and this Court's decision in *Moerke v. Peterson Motors, Inc.*, 92 Pa. Superior Ct. 210 (1927). We find that

the lower court's reliance on this authority was an error of law requiring reversal. *Dauphin Deposit Co. v. World Mutual Health and Accident Ins. Co. of Pa.*, 206 Pa. Superior Ct. 406, 409, 213 A.2d 116, 117 (1965) (appellate court must reverse where lower court commits error of law).

■ First, laches is an equitable doctrine not assertable in an action at law. *Transbel Inv. Co. v. Scott*, 344 Pa. 544, 547, 26 A.2d 205, 207 (1942). In effect, laches is an equitable version of the statute of limitations. *Id.* The two concepts are, therefore, mutually exclusive and the lower court erred in applying laches to this action at law.

■ Second, the lower court's reliance upon *Moerke v. Peterson Motors, supra* is similarly misplaced. In *Moerke*, this Court held that a wife's delay in bringing an action in conversion against her husband constituted acquiescence in his conduct. *Id.* at 212–13. This theory has only been recognized in one other case. *See Brehm v. Wyoming Bank & Trust Co.*, 351 Pa. 281, 286, 40 A.2d 464, 466 (1945). *Brehm* also involved a spousal conflict. Accordingly, it appears that the novel theory of acquiescence, if it is viable at all, is limited in application to actions involving a husband and wife. Therefore, the lower court erred in applying it to this purely business relationship.

■ Finally, we note that appellant did not unduly delay bringing this action. The complaint was filed three months after appellee ceased payments under the revised agreement. That appellant attempted to negotiate with appellee over a two-year period during which appellee made some payments does not bar his action, particularly where the statute of limitations applies and has not been pled by appellee as a defense. *See* Lower Court Opinion at 10, n. 10. *See also* Pa.R.Civ.P. 1030 (affirmative defenses such as statute of limitations must be raised in pleadings).

Accordingly, we reverse the lower court order, enter judgment in favor of appellant, and remand the case for a hearing to determine damages.

Reversed and remanded. Jurisdiction is relinquished.